IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 7, 2006

# STATE OF TENNESSEE v. TRAVIS YOUNG

**Appeal from the Criminal Court for Shelby County
Nos. 03-05457, 03-05459 W. Otis Higgs, Jr., Judge**

---

**No. W2005-02593-CCA-R3-CD - Filed March 28, 2007**

---

The Defendant, Travis Young, was convicted of two counts of aggravated robbery, three counts of aggravated assault, two counts of reckless aggravated assault, and one count of intentionally evading arrest. The trial court sentenced the Defendant to an effective sixteen-year sentence. On appeal, the Defendant contends that the trial court erred when it: (1) classified him as a Range II offender; (2) enhanced the Defendant's sentences; and (3) imposed consecutive sentences. We affirm the judgments of the trial court as modified, and we remand the case for entry of judgments consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed as Modified**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Phyllis Aluko and Robert Jones (on appeal), and Timothy Albers (at trial), Memphis, Tennessee, for the Appellant, Travis Young.

Robert E. Cooper, Jr., Attorney General and Reporter; Brian Clay Johnson, Assistant Attorney General; William L. Gibbons, District Attorney General; Paul Goodman, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Procedural History

This case arises from the Defendant's robbing and shooting of Christopher Bridges, the victim, and his subsequent fleeing from police in the victim's car. In case number 03-05459, which involved the shooting and robbery, a jury convicted the Defendant of two counts of aggravated robbery, a Class B felony, and one count of aggravated assault, a Class C felony. The trial court merged the Defendant's two aggravated robbery convictions and sentenced the Defendant as a Range I offender to ten years. The trial court sentenced the Defendant as a Range II offender to six years for his aggravated assault conviction, and it ordered all the sentences to run concurrently.

In case number 03-05457, which involved charges stemming from the Defendant's fleeing from police in a high speed chase after the shooting and colliding with two police cars, a jury convicted the Defendant of two counts of aggravated assault, a Class C felony, two counts of reckless aggravated assault and one count of intentionally evading arrest, Class D felonies. The trial court sentenced the Defendant as a Range II offender to an effective six-year sentence. The sentences from case numbers 03-05457 and 03-05459 were run consecutively, for a total effective sixteen-year sentence.

The Defendant appealed his convictions and sentences to this Court. State v. Travis Young, No. W2004-01752-CCA-R3-CD, 2005 WL 1541854 (Tenn. Crim. App., at Jackson, Mar. 1, 2005), *no Tenn. R. App. 11 application filed*. On appeal, this Court affirmed the Defendant's convictions but remanded his case for re-sentencing because the trial court failed to make specific findings supporting its imposition of consecutive sentences. Id. at *8. This Court further concluded that the record did not support the trial court's classification of the Defendant as a Range II offender when it sentenced him for his Class C and D felony convictions. Id. at *6. We requested that the trial court, among other things, "state the specific facts supporting each enhancement factor, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the length of the Defendant's sentences." Id. at *8. On remand, the trial court conducted another sentencing hearing and reapplied the exact terms of the Defendant's original sentence without articulating specific findings of fact or articulating how the enhancement and mitigating factors were evaluated, as was requested by this Court.

## II. Facts

In the Defendant's first appeal of this case, we recited the facts involved in the case as follows:

> Christopher Bridges testified that he knew Defendant only by his nickname "T-Money." On February 25, 2003, Mr. Bridges picked Defendant up at his house in Memphis around 10:00 a.m., and the two men went to lunch at Church's Chicken, a restaurant. Mr. Bridges said that it had been snowing, and the restaurant's dining room was closed. Mr. Bridges bought food at the drive-through window, and the two men went to the Southern Sun Motel to eat their lunch. Mr. Bridges explained that he did not want to drive around in the snow.
>
> During lunch, Defendant went into the bathroom. When he returned, he was armed with a revolver. Defendant told Mr. Bridges to give him his money, jewelry and car keys. After Mr. Bridges complied with the demands, Defendant left the motel room and told Mr. Bridges not to come out of the room or he would "blow [his] head off." Mr. Bridges, however, followed Defendant to Mr. Bridges' car and asked Defendant to at least return his driver's license and other keys. Defendant shot Mr. Bridges in the leg twice and drove off. Mr. Bridges said he owned a white 1994

Mazda 626.

On cross-examination, Mr. Bridges said that he had known Defendant for about two months, and the two men were becoming friends. Mr. Bridges said that he had been to the Southern Sun Motel before, but not with Defendant.

On February 27, 2003, Officer Harold Tellez with the Memphis Police Department and Officer Jeffrey Jensen with the Shelby County Sheriff's Department were riding patrol together in an unmarked police car. They had previously received information from the West Precinct Task Force concerning the stolen Mazda, including the vehicle's license plate number and a picture of Defendant. The officers spotted a white Mazda traveling south on Elvis Presley Boulevard. Officer Jensen pulled in behind the Mazda, and Officer Tellez verified that the vehicle's license plate number matched Mr. Bridges' license plate number. Officer Jensen activated his emergency equipment, but Defendant refused to pull over. The cars reached an intersection, and Defendant slammed on his brakes. Officer Jensen's vehicle and another police car which had joined the pursuit swerved to miss Defendant's vehicle, and both police cars ended up in front of the Mazda. Defendant drove between the two police cars, hitting Officer Jensen's vehicle in the process.

Officer Jensen and Officer Tellez continued to follow Defendant. Defendant turned abruptly onto an entrance ramp to the interstate, and Officer Jenson's vehicle spun out of control when he attempted to follow. The vehicle stopped in the mud next to the road. Officer Tellez pushed the vehicle back onto the ramp, and the two rejoined the chase.

Defendant drove toward the Mississippi state line. Several Mississippi police vehicles had set up a roadblock across the interstate near the state line. When Defendant spotted the roadblock, he made a u-turn and headed back to Memphis. When Officer Jensen attempted to turn around, his vehicle got stuck in the wet ground on the median.

Officer Tellez said that he was concerned that he and Officer Jensen were going to be injured during the chase. He said that the chase occurred around 7:00 p.m or 8:00 p.m., and there was "a lot of" traffic on the road, especially the interstate. Both officers said they were trained to handle pursuit situations.

Officer Casey Kirby with the Memphis Police Department said that he became the first vehicle in line behind the Mazda when Defendant exited the interstate after the u-turn near the state line. Officer Kirby was driving a marked police car and had activated his emergency equipment. Defendant kept braking sharply in an attempt to make Officer Kirby's car strike the Mazda in the rear.

Defendant entered the interstate again, and Officer Kirby was able to pull up beside Defendant. Defendant swerved his vehicle into Officer Kirby's, causing the police car to crash into the guard rail. Defendant's car spun around because of the impact, and the Mazda stopped facing the wrong way on the interstate. Officer Kirby said that at times during the pursuit he was driving around 125 miles per hour.

Officer Carolyn Chambers with the Shelby County Sheriff's Department was driving an unmarked police car behind Officer Kirby's vehicle. She said that Defendant's vehicle hit her car head on. Her air bags deployed but she managed to get out of the car. Officer Chambers said that Defendant frequently braked his vehicle during the pursuit, trying to get the police cars to hit the Mazda in the rear. Officer Chambers said that Defendant had the volume of the Mazda's radio turned up, and he was talking on his cell phone as he drove.

Officer Greg Tacker with the Memphis Police Department said that between forty and fifty police vehicles were ultimately involved in the chase. Officer Tacker said that at times the vehicles involved were driving between 100 and 110 miles per hour. Officer Tacker saw the Mazda strike Officer Kirby's car. Officer Tacker said that only one person exited the Mazda when it stopped. Defendant ran across the interstate and down an embankment. He was attempting to climb the chain link fence surrounding the interstate when police dogs brought him down. Officer Tacker handcuffed and searched Defendant. He did not find any drugs or weapons on Defendant.

Officer Norman Peter Benjamin searched Defendant when he was brought to the Regional Medical Center for treatment of his dog bites. Officer Benjamin said he found various items with Mr. Bridges' name, an earring, and a ring in Defendant's pockets.

Officer Richard Phillips knew that Defendant used the nickname "T-Money." He included Defendant's photograph in a line-up which was shown to Mr. Bridges. Mr. Bridges identified Defendant as the man who robbed him and stole his car.

Young, 2005 WL 1541854, at *1-3.

### III. Re-sentencing Hearing

The presentence report shows that the Defendant has been convicted of four misdemeanor criminal offenses since reaching the age of majority. The record also reflects two judgments of conviction against the Defendant for two felonies: theft of property over $10,000; and theft of property over $500.

At the Defendant's re-sentencing hearing, the Assistant District Attorney asked the trial court to impose the same sentence and reiterated the facts of the underlying case. The ADA argued that the trial court should sentence the Defendant as a Range II offender for his Class C and D felony convictions on account of his two prior theft convictions. The ADA requested a sentence of six years for each of the Defendant's Class C and D felony convictions in case numbers 03-05457 and 03-05459. Then he asserted that the Defendant showed no hesitation in risking others' lives, that the Defendant shot Bridges in cold blood and that the subsequent high speed pursuit could have caused any number of fatalities to police officers or to civilians. The ADA asked the trial court to sentence the Defendant as a dangerous offender and to run his sentences in case numbers 03-05457 and 03-05459 consecutively. Defense counsel contended that the Defendant should receive the minimum sentences for his convictions, that the Defendant's age of twenty-five should be considered as a mitigating factor, and that the State failed to meet its burden to show that the Defendant's sentences should run consecutively to each other.

The trial court concluded that:

> It was a particularly gruesome case, involving tremendous punishment. This man was shot, I mean, I don't have to rehash those facts. But, I'm going to submit to you a sentencing finding of fact. You might fill that out and submit it to me.
>
> And I'll sentence the Defendant appropriately and will allow him to appeal the sentencing. So, as soon as you get it filled out, I'll sentence him appropriately.
> . . .

Within the record are sentencing findings of fact forms signed by the trial court for each count of both indictments. These forms identify the mitigating and enhancement factors that the trial court applied to the Defendant's sentence, the factors used to impose consecutive sentences, and the factors used to determine that the Defendant was not entitled to receive probation. On the sentencing finding of fact forms, the trial court judge marked that he considered all the relevant factors when determining that the Defendant was not entitled to alternative sentencing. The trial court re-sentenced the Defendant as a Range II offender for his Class C and D felony convictions. In case number 03-05457, the trial court re-sentenced the Defendant to six year sentences at thirty-five percent for his convictions of two counts of aggravated assault, two counts of reckless aggravated assault, and one count of intentionally evading arrest. The sentencing finding of fact forms indicate that the trial court applied the following enhancement factors to the Defendant's sentences pursuant to Tennessee Code Annotated section 40-35-114 (2003): enhancement factor (2), that the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; enhancement factor (11), that the defendant had no hesitation about committing a crime when the risk to human life was high; and enhancement factor (17), that the crime was committed under circumstances under which the potential for bodily injury to a victim was great. In count five of indictment number 03-05457, the conviction for a Class D felony intentionally evading arrest, the trial court applied the enhancement factors listed above as well as enhancement factor (3), that the offense involved more than one victim.

In indictment number 03-05459, the trial court re-sentenced the Defendant to ten years, as a Range I offender, for his merged aggravated robbery convictions and to six-years, as a Range II offender, for his aggravated assault conviction. The sentencing finding of fact forms indicate that the trial court applied the following enhancement factors to both sentences: enhancement factor (2), that the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; enhancement factor (7), that the personal injuries inflicted upon or the amount of damage to property sustained by or taken from the victim was particularly great; enhancement factor (11), that the defendant has no hesitation about committing a crime when the risk to human life was high; and enhancement factor (17), that the crime was committed under circumstances under which the potential for bodily injury to a victim was great. According to the sentencing finding of fact forms, the trial court ordered the Defendant's sentences for case numbers 03-05457 and 03-05459 to run consecutively because the Defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high. See Tenn. Code Ann. § 40-35-115(4).

## IV. Analysis

On appeal, the Defendant contends that the trial court erred when it sentenced him. He argues that the trial court improperly classified him as a Range II offender, improperly applied enhancement factors, and failed to weigh the mitigating factor demonstrated in the record. The Defendant further argues that the trial court erred when it imposed consecutive sentences based on the factor that he was a dangerous offender. The State concedes that the trial court improperly applied some enhancement factors, but it contends that other enhancement factors apply and that the trial court properly enhanced the Defendant's sentences to the proper amount of time to be served. The State also argues that the trial court properly found that the Defendant was a Range II offender for his Class C and D felony convictions and that the record supports the trial court's decision to run the Defendant's sentences consecutively.

When a defendant challenges the length, range or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003)[1]. As the Sentencing Commission Comments to this section note, the burden is now on the appealing party to show that the sentencing is improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts. This means that if the trial court followed the statutory sentencing procedure, made findings of facts that are adequately supported in the record and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, Tennessee Code Annotated section 40-35-103 (2003), we may not disturb the sentence even if a different result was preferred. State v. Ross, 49 S.W.3d 833, 847 (Tenn. 2001). The presumption does not apply to the legal conclusions reached by the trial court in

---

[1] We note that on June 7, 2005, the General Assembly amended Tennessee Code Annotated sections 40-35-102(6), -114, -210, -401. See 2005 Tenn. Pub. Acts ch. 353, §§ 1, 5, 6, 8. However, the amended code sections are inapplicable to the Defendant's appeal.

sentencing a defendant or to the determinations made by the trial court that are predicated upon uncontroverted facts. State v. Dean, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994).

"To facilitate appellate review, the trial court 'must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence.'" State v. Imfeld, 70 S.W.3d 698, 704 (2002). Because the trial court failed to make the specific findings of fact required and failed to articulate how the enhancement and mitigating factors were evaluated, we observe as a preliminary matter that there is not an affirmative showing in the record that the trial court adequately considered the sentencing principles; therefore, we will review the trial court's determinations de novo without a presumption of correctness. See Tenn. Code Ann. § 40-35-401(d); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, we must consider: (a) any evidence received at the trial and/or sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel relative to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or enhancement factors; (g) any statements made by the defendant on his or her own behalf; and (h) the defendant's potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. § 40-35-210 (2006); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging a sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2006), Sentencing Comm'n Cmts.

Initially, we note that, applicable to this case, unless there are enhancement factors present, the presumptive sentence to be imposed for a Class B, C, or D felony is the minimum in the range. Tenn. Code Ann. § 40-35-210(c) (2003). Our sentencing act provides that procedurally, the trial court, or this Court upon a de novo review, is to increase each sentence within the range based upon the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors. Tenn. Code Ann. § 40-35-210(d), (e) (2003).

### A. Case Number 03-05459

We being our review of the Defendant's sentences with his offenses in case number 03-05459 because they occurred first in time. First, we must address the Defendant's applicable range. A Range I standard offender is simply defined as a defendant who is, in pertinent part, not sentenced as a multiple offender. Tenn. Code Ann. § 40-35-405(a)(1) (2006). As pertinent to the Defendant, "[Range II] 'multiple offender' is a defendant who has received . . . [a] minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, a higher class, or within the next two lower felony classes . . . ." Tenn. Code Ann. § 40-35-106(a)(1). "In determining the number of prior convictions a defendant has received: (1) 'Prior conviction' means a conviction for

an offense occurring prior to the commission of the offense for which the defendant is being sentenced; . . . ." Tenn. Code Ann. § 40-35-106(b)(1).

The convictions in this case are for two counts of aggravated robbery, a Class B felony, and one count of aggravated assault, a Class C felony. The Defendant has two previous felony theft convictions: one Class D Felony conviction for theft of property over $500; and one Class C felony conviction for theft of property over $10,000. Therefore, we conclude that the Defendant is a Range II offender for sentencing purposes. As such the applicable sentence range for his two merged aggravated robbery convictions is "not less than twelve (12) nor more than twenty (20) years . . . ." Tenn. Code Ann. § 40-35-112(b)(2). The applicable sentencing range for the Defendant's aggravated assault conviction is "not less than six (6) nor more than ten (10) years; . . . ." Id. at § -112(b)(3).

We now turn to decide which enhancement factors are applicable to the Defendant's sentence. First, we conclude that enhancement factor (2), that the Defendant has a previous history of criminal convictions in addition to those necessary to establish his range, applies to enhance his sentences for all three convictions. In drawing this conclusion, we rely in part upon the Defendant's prior record. In addition to the two felony convictions that established the Defendant's range, he has misdemeanor convictions. Further, we rely upon the Defendant's convictions in case number 03-05457, which include two aggravated assault convictions, two reckless aggravated assault convictions, and one intentionally evading arrest conviction. In State v. Henry Hawkins, No. W2005-00781-CCA, 2006 WL 1703817, at *21 (Tenn. Crim. App., at Jackson, June 21, 2006), *Tenn. R. App. P. 11 application denied* (Tenn. Oct. 30, 2006), this Court noted that, "'[A]ny criminal behavior occurring prior to the sentencing hearing may be considered as an enhancement factor whether the criminal behavior occurred before or after the commission of the offense.'" Id. (quoting State v. Erwin Scott Patterson, No. E2001-02652-CCA-R3-CD, 2002 WL 31207468 (Tenn. Crim. App., at Knoxville, Oct. 4, 2002), *no Tenn. R. App. P. 11 application filed*). Therefore, the Defendant's conviction in case number 03-05457 may be used to enhance his convictions in case 03-05459 because judgments of these convictions are properly before the Court.

Enhancement factors (7), (10), and (17) were all improperly applied by the trial court. Enhancement factor (7), that the personal injuries inflicted upon or the amount of damage to property sustained by or taken from the victim was particularly great, does not apply to the Defendant's convictions. We note that the personal injuries being particularly great does not apply because the record is unclear whether the convictions, for aggravated assault and aggravated robbery, were based upon a finding of serious bodily injury, making this enhancement factor an essential element of the offenses for which the Defendant was convicted. See State v. Jones, 883 S.W.2d 597, 602 (Tenn. 1994). Further, while the victim's car and other personal property was stolen by the Defendant, the proof presented does not support a finding that the amount of damage to property sustained or taken from the victim was particularly great.

Enhancement factor (10), that the defendant had no hesitation about committing a crime when the risk to human life was high, does not apply because risk to the victim's life is an element

of the offenses and there was no proof at trial that there were any other people present at the time of the shooting. Accordingly, there is no evidence that the Defendant created a high risk to the life of anyone other than the intended victim. See State v. Joe Mitchell, No. W1999-06610-CCA-R3-CD, 2000 WL 633340, at *5 (Tenn. Crim. App., at Jackson, May 12, 2000), *no Tenn. R. App. P. 11 application filed*. We further conclude that enhancement factor (17) that the crime was committed under circumstances under which the potential for bodily injury to a victim was great is not applicable as it is an element of the offense as this offense involved a specific, named victim. See State v. Imfeld, 70 S.W.3d 698, 706 (Tenn. 2002). There are no other applicable enhancement factors.

The Defendant offered in mitigation that "because of youth . . . he lacked substantial judgment in committing the offense. See Tenn. Code Ann. § 40-35-113(6). The record reflects that the Defendant was twenty-five at the time of sentencing, and he did not demonstrate on the record how is age impacted his judgment. We conclude, therefore, that this mitigating factor is inapplicable.

We afford the one applicable enhancement factor great weight and find that there are no applicable mitigating factors. Accordingly, we sentence the Defendant to sixteen years, the midpoint sentence within his range, Range II, for his merged aggravated robbery convictions. We sentence him to six years for his aggravated assault conviction. These sentences will be run concurrently with each other for an effective sixteen-year sentence.

### B. Case Number 03-05457

In case number 03-05457, the Defendant was convicted of two counts of aggravated assault, a Class C felony, two counts of reckless aggravated assault and one count of intentionally evading arrest, both Class D felonies. As previously explained, the Defendant is a Range II offender. Therefore, the applicable sentencing range for his Class C felony conviction is six to ten years and is four to eight years for his Class D felony convictions. Tenn. Code Ann. § 40-35-112(b)(3) & (4). Again, we initially note that, applicable to this case, unless there are enhancement factors present, the presumptive sentence to be imposed for a Class C or D felony is the minimum in the range. Tenn. Code Ann. § 40-35-210(c) (2003). This Court upon a de novo review is to increase each sentence within the range based upon the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors. Tenn. Code Ann. § 40-35-210(d), (e) (2003).

We now turn to decide what enhancement and mitigating factors apply to the Defendant's sentence. For the reasons previously discussed, enhancement factor (2), that the Defendant has a previous history of criminal convictions in addition to those necessary to establish his range, applies to enhance his sentences for all five convictions. In drawing this conclusion, we again rely on the Defendant's prior record and his convictions in case number 03-05459, which include two aggravated robbery convictions and one aggravated assault conviction. See Hawkins, 2006 WL 1703817, at *21.

Enhancement factor (11), that the defendant had no hesitation about committing a crime when the risk to human life was high, applies to the Defendant's sentences for his two aggravated assault convictions and his two reckless aggravated assault convictions. This enhancement factor may apply in situations where persons other than the victim are placed in danger by a defendant's behavior. State v. Kelley, 34 S.W.3d 471, 480 (Tenn. Crim. App. 2000). In the case under submission, the Defendant's actions endangered the lives of other motorists in addition to the victims of the aggravated assault. The Defendant led the police officers on a high speed chase during times of heavy traffic, drove through stop signs, and reached excessive speeds. Thus, the he record clearly supports the application of enhancement factor (11).

This enhancement factor does not apply to the Defendant's conviction for intentionally evading arrest, which is a Class E felony unless the flight creates a risk of death or injury to innocent bystanders or other third parties, in which case it is a Class D felony. Tenn. Code Ann. § 39-16-603 (b)(3) (2003). The Defendant was convicted of this offense as a Class D felony because he created such a risk. Consequently, enhancement factor (11) does not apply to the Defendant's sentence because it is inherent in his conviction.

As previously discussed, no mitigating factors apply. Accordingly, we sentence the Defendant to seven years, one year above the presumptive minimum, for his two aggravated assault convictions based upon the application of two enhancement factors. We sentence the Defendant to five years for both his reckless aggravated assault convictions based upon the application of two enhancement factors. Finally, we sentence the Defendant to four years for his intentionally evading arrest conviction, affording the one applicable enhancement factor little weight. These sentences are to be served concurrently, for an effective seven-year sentence.

### C. Consecutive Sentences

We now turn to decide whether the Defendant's sentences in cases 03-05457 and 03-05459 should be served concurrently or consecutively. A trial court may impose consecutive sentences if the State proves by a preponderance of the evidence that the offender meets at least one of the following criteria:

> (1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;
> (2) The defendant is an offender whose record of criminal activity is extensive;
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high.
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual

abuse of a minor with consideration of the aggravating circumstances arising form the relationship between the defendant and victim or victims, the time span of the defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
(6) The defendant is sentenced for an offense committed while on probation; or
(7) The defendant is sentenced for criminal contempt.

Tennessee Code Annotated section 40-35-115(b)(1)-(7) (2003). In the case under submission, the trial court found that the Defendant was a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high. We conclude that the evidence in the record supports this finding.

Indeed, the Defendant's conduct indicates that he has little regard for human life. The Defendant robbed the victim at gunpoint, stole his car, and then shot him in the leg when leaving. He then was involved in a high speed chase through secondary roads and onto the interstate. The Defendant ignored stop signs while driving on the secondary roads, and drove between fifty and fifty-five miles per hour in residential areas, and sixty to sixty-five miles per hour in business districts. The Defendant swerved his vehicle, ran a police car into a guard rail, and braked hard at an intersection, causing a vehicle to spin around. Eventually the chase involved forty to fifty different police officers. The chase occurred around 7:00 p.m. or 8:00 p.m.,when traffic was heavy, particularly on the interstate. Thus, the trial court was clearly correct when it determined that the Defendant was a dangerous offender.

However, finding the Defendant to be a "dangerous offender," standing alone, is not sufficient to support consecutive sentences. In State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995), our Supreme Court set forth two additional requirements for consecutive sentences when the defendant is a "dangerous offender": the trial court must also find: (1) "that an extended sentence is necessary to protect the public against further criminal conduct by the defendant"; and (2) "that the consecutive sentences . . . reasonably relate to the severity of the offenses committed"; and (3) are congruent with the general principles of sentencing. Id. at 939. The requirement of additional findings when the defendant is a "dangerous offender" "arises from the fact that of all of the categories for consecutive sentencing, the dangerous offender category is the most subjective and hardest to apply." State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999). The other categories for consecutive sentencing have "self-contained limits"; thus, the additional findings are limited to cases involving consecutive sentencing of "dangerous offenders." Id.

In applying these additional factors, we conclude, as did the trial court, that an effective sentence of sixteen years reasonably relates to the severity of the offenses committed by the Defendant. Therefore, we conclude that the Defendant's sentences in case number 03-05459 shall run concurrently with his sentences in case number 03-05457, for an effective sixteen-year sentence.

## IV. Conclusion

After reviewing the record and applicable authority, we modify the judgments of the trial court and remand the case for the entry of judgments consistent with the opinion of this Court.

_____
ROBERT W. WEDEMEYER, JUDGE